IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS STEWART AND<br>TERENCE RICHARDSON<br>     *Plaintiffs*, | § § § § | |
| vs. | § § | CIVIL ACTION NO. _____ |
| WALMART INC., WAL-MART<br>STORES TEXAS, LLC, AND<br>JANE/JOHN DOE EMPLOYEES<br>     *Defendants*. | § § § § § § | JURY DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR JURY TRIAL**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiffs Dennis Stewart (hereinafter "Dennis") and Terence Richardson (hereinafter "Terence") file this Original Complaint and Request for Jury Trial for the following reasons:

**I.**

**BRIEF STATEMENT OF CASE**

1.1    Plaintiffs are both Black men. Dennis is a 55-year-old former police officer for Montgomery County, Texas and currently serves as a road foreman for Montgomery County. He is also a deacon in his church and has never been arrested or charged with any crime prior to the events addressed in this case. Terence is a 53-year-old pastor and leader of a church located in Montgomery County, Texas. He is a family man who is known for his selfless work in the community. These men have been lifelong friends.

1.2     Dennis and Terence occasionally shopped at a Walmart store, No. 400, located at 1407 North Loop 336 W in Conroe, Texas, 77304 (hereinafter "Walmart"). On September 10, 2020, after Dennis had paid $300.94 for a 58-inch Hisense television, both Plaintiffs attempted to return the television later that day after the television did not work properly. With his Walmart receipt in hand[1]—proving he had paid for the television—Dennis, with the help of his friend Terence to help carry the large television, attempted to return the television to the Walmart from which it had been purchased just hours earlier.  A white Walmart employee working at the Customer Service counter accused Dennis of stealing the television, refused to accept the television in return or exchange, and called the police claiming Dennis and Terence had stolen the television. The police showed up, detained, and handcuffed both Dennis and Terence in front of the store where other store customers looked on as they entered and exited the store. The indignity to Plaintiffs did not stop there, they were next paraded in front of the store,  taken and held in the Loss Prevention Office where they pled and asked for the Loss Prevention Officer ("LPO") to look at the Walmart receipt which proved the television had been purchased. Despite the fact there was no evidence of theft, and the police ultimately released Plaintiffs for lack of any evidence of a theft having occurred, the Walmart store executives/managers made Dennis and Terence sign a paper requiring them never to return to the store or they would be arrested, and the store still refused to honor the agreement to accept the returned television. Now, Walmart has created a false record

---

[1] A copy of the Walmart receipt, dated September 10, 2020, is attached as **Exhibit 1**, along with a picture of the matching serial and item numbers located on the box in which the purchased television was contained.  See **Exhibit 2**.  All attached exhibits are incorporated herein by reference unless otherwise stated.

implying Plaintiffs are thieves and unwelcomed customers.

    1.3    Plaintiffs sue Walmart and the Jane/John Doe Walmart employees for violations of 42 USC § 1981 because they impaired Dennis purchase contract which included a right to return defective merchandise, for racial discrimination, false arrest and imprisonment, breach of contract and warranty, intentional infliction of emotional distress, negligence and negligence *per se*.[2]

    1.4    Plaintiffs ask for a jury trial.

## II.

## PARTIES

    2.1    Plaintiff Dennis Stewart is a Texas resident.

    2.2    Plaintiff Terence Richardson is a Texas resident.

    2.3    Defendant Walmart Inc. is a Delaware corporation authorized to do business in the state of Texas. It may be served with process by and through its registered agent in Texas, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

    2.4    Defendant Wal-Mart Stores Texas, LLC is a Delaware limited liability company authorized to do business in the state of Texas. It may be served with process by and through its registered agent in Texas, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

    2.5    Jane/John Doe Walmart employees/managers' identities are presently unknown. Once identified, they will be added as defendants and served with process.

## III.

---

[2] Defendants' conduct might also be actionable as disparaging Plaintiffs' integrity and honor, as well as *per se* defamatory in that they accused the Plaintiffs of engaging in a criminal act.

## JURISDICTION AND VENUE

3.1     This Court has federal question and diversity jurisdiction over the claims in this suit pursuant to 28 U.S.C. §§ 1331, 1332(a), 1343, and 42 U.S.C. §§ 1981, 1988, and 2000a to a(6). Also, all or substantially all of the material events giving rise to this suit occurred in the Southern District of Texas, Houston Division.  28 U.S.C. § 1391(b)(2).

3.2     Finally, the claims and damages asserted herein are within the Court's jurisdictional limits, and all conditions precedent, if any, to bring the claims asserted in this suit have occurred and/or have been performed.

### IV.

### NOTICE FACTS

4.1     Walmart is a commercial enterprise engaged in interstate and intrastate commerce. It provides accommodations to the public, including the provision of food, household items, and other merchandise. Dennis, a 55-year old black man, and his accompanying friend, Terence, a 53-year old black man, wished to return or exchange a previously purchased television at the Walmart store from which Dennis had purchased it. As an express condition of the purchase contract, Walmart agreed to allow items to be returned within a reasonable time period for either an exchange or refund. However, this contractual right was denied to Plaintiffs when Walmart and its Jane/John Doe employees knowingly, intentionally and purposefully racially profiled Plaintiffs as thieves because and would not honor the agreement. The role race played in what happened will become more apparent when the following facts are considered.

4.2     When Plaintiffs attempted to return the television, and presented the Walmart

receipt showing that the merchandise had been purchased, Defendants refused to honor the contract as they would have with white customers. They accused Plaintiffs of stealing the television, called the police, had Plaintiffs handcuffed, paraded them in front part of the store, and held them held in the Loss Prevention Office for hours. After knowing from empirical evidence that they had wrongly accused Plaintiffs of stealing, having had them detained, and handcuffed, Defendants demanded Plaintiffs sign a document in order to leave the store and never return. Walmart further failed to honor the contract with Plaintiffs by refusing to permit or allow them to return the television for either a refund or exchange. Plaintiffs were not treated as white people would have been treated, and there is no factual or legal excuse to justify how they were treated by the Defendants other than their race.

   4.3  The offensive conduct alleged in this case occurred on September 10, 2020. On that date, Dennis arrived at Walmart, went to the Electronics Department and legally purchased a 58-inch Hisense television for the total price of $300.94. After paying for the television, he was handed a Walmart receipt to document proof of purchase. He then left the store with the television.

   4.4  Coincidentally, on the same day, Terence, shopping alone at a totally different time from when Dennis had been shopping, bought several personal aid products for himself. Terence had no knowledge that Dennis had shopped at the Walmart earlier in the day. They had not spoken that day prior to their respective visits to the store. Terence paid for his personal items totaling $46.64. He also paid a deposit of $48.50 on a layaway item held at the store. For both payments, Terence was given store receipts. Terence then left the store without incident.

   4.5  Later the same day, Dennis called his friend Terence to ask for assistance with

unpacking and mounting the television at his home (i.e., mounting, lifting, placing and putting the large television in place at his house). When they turned on the television, they noticed the sound of the television was distorted. Repeated attempts at turning the television on and off did not cure the problem. At that time, Dennis asked Terence to go with him while he returned the television to Walmart—with the expectation he and Terence would return with a working television which they both could mount at the house. Terence helped Dennis repack the television in its original box, along with all instructions and remote, and helped lift the television into Dennis's vehicle, and headed to Walmart.

4.6     Walmart has a widely known agreement to permit customers to return defective items within a specified time-period for either a refund or exchange. Dennis complied with that agreement by returning the defective television on the same day it had been purchased.

4.7     Both Dennis and Terence entered the Walmart store and took the television directly to the Walmart Customer Service counter. Dennis presented his receipt for the purchase of the television and was surprised by what happened next. A white male Walmart associate at the counter, and two other white associates in the Customer Service department, proceeded to examine Dennis' receipt and the television. This examination took approximately an hour. Plaintiffs both questioned the Walmart associates about why the television exchange process was taking so long. After receiving no answer, Dennis proceeded to ask defendant John Doe, a white male Walmart Loss Prevention Officer, about the unusual length of time it was taking to complete the exchange. John Doe also gave no explanation for the delay. Eventually, defendant Jane Doe, a white female Walmart manager, appeared in the Customer Service Department. After she was informed about

Dennis' desire to receive a working television in exchange for the malfunctioning one, she returned with a new television and placed it to the side of the register in the Customer Services department. Plaintiffs then proceeded to approach the register, as they believed that Walmart was about to honor the agreement; however, this expectation was wrong. Defendants refused to provide a working television. They also refused to refund Dennis' money. Instead, they had both Plaintiffs—even Terence who had nothing to do with the purchase of the television and was there only to help his friend—detained, handcuffed, and escorted around the front of the store by police. This was not how Walmart typically treats a customers and was contrary to its policy of accepting returns and exchanges.[3] Dennis had fulfilled his obligations under the contract, but Walmart reneged on doing its part.

   4.8  While Plaintiffs were standing at the Walmart Customer Service department register, four white police officers approached them from behind and instructed them to put their hands on their head, ordered them not to move, searched their bodies and emptied their pockets, and handcuffed them as criminals in plain view of everyone in the vicinity. Even after finding no stolen items or contraband, the Walmart John Doe employee(s) and police officers detained Plaintiffs and escorted them to the Walmart Loss Prevention Office. Numerous shoppers observed these embarrassing acts. Dennis was taken inside the Loss Prevention Office while Terence stood handcuffed outside the Loss Prevention Office in clear view of other customers. Defendants dehumanized these men and made them appear to be criminals when they were simply attempting to follow the terms of the Walmart contract—i.e., customers could return defective merchandise

---

[3] A copy of Walmart's return policy is attached as **Exhibit 3**.

for a refund or exchange.

4.9     Terence was eventually escorted into the Loss Prevention Office. Plaintiffs repeatedly asked for an explanation for being detained, searched, handcuffed and embarrassed in such a demeaning fashion, and also asked why the defective television was not allowed to be exchanged. As John Doe, the police officers, and Walmart associates came in and out of the Loss Prevention Office, no one answered their questions.  It was at this point Dennis- -a grown 50+ year old man—began to cry and begged for answers.  He was scared and ashamed.

4.10    Even after Dennis had been crying for up to an hour, Defendants provided no answers. Eventually, Jane Doe stormed into the Loss Prevention Office and threw Dennis' receipt on the table. She then looked at Plaintiffs and screamed, "take this fucking receipt, take that fucking TV, get the fuck out of this store, and never fucking come back." Plaintiffs were startled and completely confused.  They questioned her as to why the television was not being exchanged and why they were being treated the way they were.  Jane Doe simply repeated, "take this fucking receipt, take that fucking TV, get the fuck out of this store, and never fucking come back." After that tirade, the police officers began to uncuff Plaintiffs, and Plaintiffs were required to sign a "Criminal Trespass Warning" before they would be permitted to leave the store.[4]  Such a document guarantees that criminal charges would remain on file at Walmart against Plaintiffs should they try to return—something that they should not have hanging over their heads since they did nothing

---

[4] Plaintiffs only signed the document so they could be free to leave the store.  Plaintiffs maintain this was an attempt by Defendants to try to cover their tracks for the wrongful arrest and defamatory accusations they leveled against Plaintiffs and the horrendous treatment they put the Plaintiffs through.

wrong. Plaintiffs were then permitted to leave the Walmart store in shame with the same malfunctioning television and Walmart receipt they had entered the store with several hours earlier.

    4.11    Dennis is a deacon at his church; and a family-oriented man who has never been arrested or charged with any crime before the incident in question. Terence is the pastor and leader of a church in Montgomery County, Texas. He, too, is a family-oriented man that constantly pours back into his community by constantly being a man of selfless service and dedicated community outreach. The notoriety of what happened to them at the Walmart store has spread among church members, friends, relatives, co-workers, and others—causing tremendous pain, embarrassment and mental anguish. Plaintiffs are regularly tormented and awakened from their sleep with nightmares about what they experienced at the Walmart. Such a belittling event reminded these 50+ year old Black men that some people will always see them as "niggers." Such treatment hurts so deeply it is impossible to describe. It is like a cancer that eats at them every moment of the day—-causing them to try to avoid people they think might be inclined to act the same way toward them. Such a life is emotionally crippling. All a man has is his good name and these Defendants stole that from Plaintiffs. Plaintiffs will forever bear the mental and emotional scars Walmart's atrocious racism occasioned.

**V.**

**<u>CAUSE OF ACTION – FALSE ARREST AND IMPRISONMENT</u>**

    5.1    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

5.2     Defendants engaged in false imprisonment by willfully detaining Plaintiffs without Plaintiffs' consent. Defendants had no legal authority or justification to detain Plaintiffs.

## VI.

## CAUSE OF ACTION – BREACH OF CONTRACT AND WARRANTY

6.1     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

6.2     Plaintiffs entered into a valid and enforceable contract and performed their contractual obligations by paying consideration for the television. Defendants breached said contract, refused to perform their contractual obligations, and breached Walmart's express warranties by denying Plaintiffs' television exchange for a functioning television, hence leaving Plaintiffs with a malfunctioning television instead.

6.3     Defendants further precluded Plaintiffs from enforcing said contract and express warranties by prohibiting/banning Plaintiffs from being on Walmart's property.

## VII.

## CAUSE OF ACTION – 42 U.S.C. § 1981

7.1     The above allegations are incorporated herein by reference.

7.2     Defendants intentionally and consciously engaged in the aforementioned conduct based on the race of Plaintiffs in violation of 42 U.S.C. § 1981.

7.3     Plaintiffs are (1) members of a racial minority; (2) there was an intent to discriminate against them on the basis of race by Defendants; and (3) the discrimination concerns

one or more of the activities enumerated in § 1981 including, but not limited to, the right to make and enforce contracts on the same basis as white citizens.

7.4     Walmart is engaged in interstate commerce and provides public accommodations. It is directly and/or vicariously liable for the acts of its agents and vice principals—the Jane/John Does—identified in this suit.

## VIII.

### CAUSE OF ACTION – 42 U.S.C. § 2000a to a(6)

8.1     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

8.2     Defendants intentionally and/or consciously engaged in the aforementioned conduct, practices, policies, and customs in violation of 42 U.S.C. § 2000a to a(6). Alternatively, the conduct was ratified and/or not corrected by persons having the ability and authority to do so.

8.3     Plaintiffs are (1) members of a racial minority; (2) there was an intent to discriminate against them on the basis of race by Defendants; and (3) the discrimination occurred at a public accommodation—specifically, that Plaintiffs were discriminated against by being prevented from carrying out business at Walmart as was afforded white customers under the same or similar circumstances at Walmart.

## IX.

### CAUSE OF ACTION – TEXAS CONSTITUTION

9.1     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

9.2 Defendants intentionally and/or consciously discriminated against Plaintiffs on the basis of race and, as such, violated Section 3a of the Texas Constitution. Defendants are liable by way of their policies and practices, as well as being directly liable for the conduct of Walmart's vice-principals for the racial discrimination detailed above.

## X.

## UNCONSCIONABLE CONDUCT

10.1 Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

10.2 Defendants engaged in unconscionable and reprehensible conduct by way of their actions, policies, and practices; and Walmart is directly or vicariously liable for the unconscionable conduct of its vice-principals for the racial discrimination detailed above.

## XI.

## CAUSE OF ACTION – NEGLIGENCE

11.1 Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

11.2 Defendants owed a legal duty to Plaintiffs to have reasonable suspicion Plaintiffs had engaged in a criminal act before calling the police to detain or arrest them, which duty they breached by calling the police on Plaintiffs to falsely report a stolen television, having Plaintiffs handcuffed and searched, and parading Plaintiffs through the front of the Walmart store as though they were thieves. Defendants were negligent in detaining Plaintiffs for hours without cause, failing to provide reasons for the detention, and showing Plaintiffs off in the store as common

criminals and thieves—which they are not. Such conduct proximately caused injuries and damages to Plaintiffs.

## XII.

## CAUSE OF ACTION – NEGLIGENCE *PER SE*

12.1   Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

12.2   Defendants' negligence constituted *per se* negligence as they violated Texas Penal Code § 20.02 by intentionally and knowingly restraining Plaintiffs without legal or just cause inside the Walmart store.  Defendants falsely imprisoned Plaintiffs for the time period when they could not leave the store and were made to remain in the store without legal or just cause.

12.3   Defendants violated their duty to exercise ordinary care and obey Texas laws.

## XIII.

## CAUSE OF ACTION – GROSS NEGLIGENCE

13.1   Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

13.2   Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Officers could have mistaken the situation and, as Black men, they could have been shot, injured or permanently disfigured because of Defendants' actions. Defendants had subjective awareness of the risk involved, and consciously and deliberately proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

## XIV.

## CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

14.1 Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

14.2 Defendants acted intentionally and/or recklessly. Defendants' conduct toward Plaintiffs was extreme and outrageous.

14.3 Defendants' conduct towards Plaintiffs caused the Plaintiffs severe emotional distress and mental anguish.

## XV.

## JURY DEMAND AND REQUEST FOR ATTORNEY'S FEES

15.1 Plaintiffs demand a jury trial and request attorney's fees if permitted by law or equity.

## XVI.

## PRAYER

For the above reasons, Plaintiffs ask that Defendants be cited to appear and answer herein, and that upon trial on the merits, Plaintiffs be awarded compensatory and punitive damages as alleged and/or proved at trial, together with attorney's fees, if allowed, pre-and post-judgment interest at the maximum lawful rate, costs of court, and such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/ Benjamin L. Hall, III
**Benjamin L. Hall, III**
State Bar No. 08743745
Federal Bar No. 8787
The Hall Law Group, PLLC
530 Lovett Blvd.
Houston, Texas 77006
Telephone: (713) 942-9600
Facsimile: (713) 942-9566
Email: bhall@bhalllawfirm.com

-AND-

/s/ Jamal Hicks
**Jamal Hicks**
State Bar No. 24106093
Federal Bar No. 3651158
The J. Hicks Law Group
530 Lovett Blvd.
Houston, Texas 77006
Telephone: (713) 942-9600
Email: jhicks@jhickslawgroup.com

**ATTORNEYS FOR PLAINTIFFS**